IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MACK TRUCKS, INC.              :      CIVIL ACTION
                               :
        v.                     :
                               :
BORGWARNER TURBO SYSTEMS, INC. :      NO. 08-2621

MEMORANDUM

Bartle, C.J.                                        March 22, 2011

Plaintiff Mack Trucks, Inc. ("Mack") filed suit against defendant BorgWarner Turbo Systems, Inc. ("BorgWarner") for breach of contract and breach of express and implied warranties. The motion of BorgWarner for summary judgment is now before the court.

I.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Where the defendant is the moving party, the initial burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements to his case." Podobnik v. U.S. Postal Service, 409 F.3d 584, 589 (3d Cir. 2005).

A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Accordingly, the court makes all reasonable inferences from the evidence in the light most favorable to the non-movant. In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004). The party opposing summary judgment, however, "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Podobnik, 409 F.3d at 594.

II.

On December 6, 2002, Mack, a Pennsylvania corporation with its principal place of business in Pennsylvania, and BorgWarner, a Delaware corporation with its principal place of business in North Carolina, entered into a contract called a Supply Agreement. Under the Supply Agreement, BorgWarner agreed to provide Mack with turbochargers for Mack's heavy-duty truck engines.[1] BorgWargner specializes in the production of turbochargers, which contain parts that spin at high speeds and require precise engineering. Section 9(b) and a separately-signed Annex V contain BorgWarner's warranties to Mack. Annex V was executed July 8, 2003, seven months after the parties signed the Supply Agreement.

Even before the Supply Agreement was signed, the parties had signed a provisional "product application agreement" ("PAA") dated October 31, 2002, that contained agreed-upon

---

1. A turbocharger recycles engine exhaust back into the engine, which increases horsepower and decreases emissions.

specifications for "prototype" turbochargers.  After Mack and BorgWarner executed the Supply Agreement, including Annex V, the parties began negotiating the contents of a second PAA to govern production of turbochargers for sale to Mack customers.  The negotiations lasted until at least July 2004.  Warranty coverage was also discussed during the negotiations.  The parties nearly reached agreement on the terms of a PAA in March 2004, but negotiations ceased, and a second PAA was never signed.

During and after negotiations for the second PAA, BorgWarner expressed to Mack its position that, in the absence of a signed PAA, BorgWarner was liable only for warranty claims based on defective materials or faulty workmanship under the terms of the Supply Agreement.[2]  Internal communications among Mack employees show Mack was aware of BorgWarner's position regarding the scope of the tubrocharger warranty.  These internal Mack communications express neither disagreement nor acquiescence with BorgWarner's position.

The parties consulted on the specifications for the turbochargers, but BorgWarner retained exclusive control over the turbochargers' ultimate design.  Those turbochargers began to fail at high rates in the field for reasons that are disputed and beyond the scope of this motion.  These failed turbochargers caused Mack to pay over $41 million to its customers in warranty

---

2. A BorgWarner representative sent letters or emails expressing this position on February 17, 2004; November 16, 2004; April 11, 2005; November 29, 2005; May 3, 2006; and May 8, 2006.

payments under a Mack warranty to its customers that covered the integrated turbocharger. BorgWarner and Mack jointly examined each failed turbocharger, and BorgWarner then made a decision about whether to reimburse Mack based on each review. For only a small number of turbochargers did BorgWarner explicitly state that its decision not to honor its warranty to Mack was the lack of a signed PAA.

In this action, Mack seeks to recover from BorgWarner an unspecified portion of the $41 million it has paid. It asserts that the money is due because of BorgWarner's failure to honor its warranty on the failed turbochargers.[3]

### III.

Counts I and II of Mack's complaint state claims for breach of contract and breach of express warranty, respectively. Count II specifically alleges that BorgWarner breached an express warranty that its turbochargers would be of good materials and workmanship.

The parties agree that Pennsylvania law governs our interpretation of the Supply Agreement, including Annex V to that agreement. In Pennsylvania, contracts for the sale of goods, such as turbochargers, are subject to Article 2 of the Uniform Commercial Code ("UCC"). See 13 Pa. Cons. Stat. §§ 2102, 2105. When interpreting contracts subject to Article 2 of the UCC, "The paramount goal ... is to ascertain and give effect to the intent

---

3. BorgWarner has made $4.9 million in warranty payments to Mack.

of the parties. In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly." PBS Coals, Inc. v. Burnham Coal Co., 558 A.2d 562, 564 (Pa. Super. Ct. 1989) (internal citations omitted). Additionally, warranties subject to Article 2 "whether express or implied shall be construed as consistent with each other and as cumulative." 13 Pa. Cons. Stat. at § 2317. In Pennsylvania, the parties' performance "is always relevant in interpreting a writing," regardless of whether that writing is ambiguous. Atl. Richfield Co. v. Razumic, 390 A.2d 736, 741 n.6 (Pa. 1978). A condition precedent is "a condition which must occur before a duty to perform under a contract arises" and the parties' intent in creating a condition precedent is a legal matter for the court to determine. Acme Mkts., Inc. v. Fed. Armored Exp., Inc., 648 A.2d 1218, 1220 & n.4 (Pa. Super. Ct. 1994).

As noted above, BorgWarner's warranties to Mack appear in § 9(b) and Annex V of the Supply Agreement. Section 9(b) of the Supply Agreement states in pertinent part:

> BorgWarner's warranties to Mack regarding the Products are set forth in Annex V, attached hereto and incorporated herein. Notwithstanding anything else in this Agreement or the Annexes to the contrary, BorgWarner warrants that the Products shall, for the period of time defined in Annex V from the date placed into service, be of good material and workmanship and shall conform to the specifications agreed upon by the parties ....

Paragraph A of Annex V reads:

> Borg Warner warrants to Mack ... that the Products will conform to the specifications provided to Borg Warner by Mack, and to any other technical requirements agreed upon by the parties. Borg Warner also warrants to Mack that the Products will be free of defects in material and workmanship in normal use and service.[4]

Finally, in paragraph F of Annex V the parties agreed that "BorgWarner shall only warrant products that have a signed application sheet and that do not exceed their limits while in operation in the field."

In its motion for summary judgment, BorgWarner argues that the warranty language in the Supply Agreement formed two distinct warranties, one for the specifications of the turbochargers and the other for "materials and workmanship." BorgWarner considers the specifications of the turbochargers to be synonymous with their design. According to BorgWarner, the specifications or "design" warranty was subject to the condition precedent in Annex V, paragraph F providing "BorgWarner shall only warrant products that have a signed application sheet." BorgWarner maintains that Mack cannot sustain its breach of contract or breach of express warranty claims to the extent Mack asserts a breach of the specifications warranty because the condition precedent has not been fulfilled, that is, because there was never a signed application sheet for the turbochargers.

---

4. Elsewhere in the contract BorgWarner's name appears as "BorgWarner," but in this paragraph of Annex V it is spelled "Borg Warner."

-6-

Mack argues that there is only one warranty, which is set forth in the "notwithstanding" clause in § 9(b) of the Service Agreement. That clause reads: "Notwithstanding anything else in this Agreement or the Annexes to the contrary, BorgWarner warrants that the Products shall, for the period of time defined in Annex V from the date placed into service, be of good material and workmanship and shall conform to the specifications agreed upon by the parties ...." In Mack's view, the condition precedent in Annex V cannot be used to blunt the "notwithstanding" clause. Mack reads paragraph F of Annex V as merely a requirement that the parties document the turbocharger's specifications.

The most natural reading of § 9(b) and Annex V of the Supply Agreement is that BorgWarner has made two distinct promises. Reading § 9(b) and Annex V together, BorgWarner promised to supply turbochargers that are (1) "of good material and workmanship"[5] and (2) that "conform to the specifications agreed upon by the parties."[6] That the parties used the same conjunctive structure in both § 9(b) and in Annex V confirms that BorgWarner intended to make two distinct promises with regard to the products it would deliver.

---

5. In Annex V, the warranty states that the turbochargers "will be free of defects in material and workmanship in normal use and service."

6. In Annex V, BorgWarner warrants that the turbochargers "will conform to the specifications provided to Borg Warner [sic] by Mack, and to any other technical requirements agreed upon by the parties."

Paragraph F of Annex V unambiguously reads as a condition precedent.  This language limits the scope of both warranties.  Under paragraph F, BorgWarner's obligation to warrant its turbochargers extends only to those "products that have a signed application sheet."  Section 9(b)'s "notwithstanding" clause merely requires that BorgWarner offer two distinct warranties.  It does not require that BorgWarner's two warranties be unconditional and does not prohibit BorgWarner and Mack from refining the contours of those warranties.  The condition precedent in paragraph F of Annex V would be mere surplusage if the "notwithstanding" clause in § 9(b) required BorgWarner to offer the same warranties with or without the signed application sheet.  Paragraph F of Annex V is not merely a requirement that the parties record the specifications in writing as Mack suggests.

Although the meaning of "signed application sheet" is not defined in the Supply Agreement, the parties' course of performance clearly establishes that both Mack and BorgWarner considered that phrase to mean a product application agreement signed by both parties.  The parties negotiated a provisional PAA before signing the Supply Agreement and then unsuccessfully attempted to negotiate a second PAA after signing the Supply Agreement.  On several occasions, BorgWarner communicated to Mack its position that, in the absence of a signed PAA, BorgWarner was liable under the Supply Agreement only for warranty claims arising from defective materials or workmanship.  Given the

Supply Agreement's warranty structure, these statements make sense only if the "signed application sheet" means a PAA. Mack has not produced any evidence either suggesting disagreement with BorgWarner's interpretation of the Supply Agreement or expressing a different interpretation.

The parties dispute whether BorgWarner is liable for turbochargers that malfunctioned due to design defects. Mack argues that the "material and workmanship" warranty implicitly includes a warranty on the design of the turbochargers, a matter over which BorgWarner had complete control.

We are not persuaded by Mack's reading of the materials and workmanship warranty. BorgWarner warranted both the quality of the turbochargers' materials and workmanship and conformity to agreed-upon specifications. We agree with BorgWarner that the design of the turbochargers fits within BorgWarner's promise that the turbochargers will "conform to the specifications agreed upon by the parties." There is no other reasonable interpretation of or purpose for this specifications warranty. In contrast, the separate "material and workmanship" warranty covers deficiencies in the execution of the design. If it were otherwise, the specifications warranty would be meaningless. See Paull v. Pivar, 53 A.2d 826, 828 (Pa. Super. Ct. 1947).

Mack has not identified, and the court has not found, any Pennsylvania case applying a "materials and workmanship" warranty to product design. Mack does cite cases applying the law of other states for the proposition that a "materials and

workmanship" warranty implicitly includes a design warranty. See Stearns v. Select Comfort Retail Corp., Case No. 08-274, 2010 U.S. Dist. Lexis 84777 (N.D. Cal. July 21, 2010); In re Saturn L-Series Timing Chain Prods. Liab. Litig., MDL No. 1920, 2008 U.S. Dist. Lexis 109978 (D. Neb. Nov. 7, 2008); Koulajian v. Trek Bicycle Corp., Case No. 90-3156, 1992 U.S. Dist. Lexis 1490 (S.D.N.Y. Feb. 10, 1992). However, each case on which Mack relies involved a person injured by a manufacturer's product in circumstances suggesting the customer did not have the opportunity to negotiate the scope of the manufacturer's warranty.

Here, Mack had the opportunity to bargain over the scope of warranty coverage. Moreover, in contrast to the cases on which Mack relies, BorgWarner offered a second warranty that its turbochargers would conform to Mack's specifications and to any other technical requirements on which the parties agreed. Mack contends that the "materials and workmanship" must be read to include design flaws because "[o]therwise no party would be responsible for the quality of [BorgWarner's] proprietary product." We are not persuaded. BorgWarner would have been bound to warrant its product's design if the parties had agreed upon specifications and recorded them in a signed PAA.

In any event, Mack maintains that BorgWarner waived any condition precedent in paragraph F of Annex V requiring a signed PAA when BorgWarner paid warranty claims in the absence of a signed PAA. A waiver of a contractual right arises "by clear,

-10-

unequivocal, and decisive action by a party with knowledge of such rights and evident purpose to surrender them." Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 148 (3d Cir. 1999). The court may infer that a party has waived a contractual right from "undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." Prime Medica Assocs. v. Valley Forge Ins. Co., 970 A.2d 1149, 1157 (Pa. Super. Ct. 2009). In contracts subject to Article 2 of the UCC, the parties' course of performance can determine whether a waiver of a contract term occurred. J.W. Goodlife & Son v. Odzer, 423 A.2d 1032, 1305 (Pa. Super. Ct. 1980).

Under this standard, BorgWarner has not waived the condition precedent as it applied to the specifications warranty related to design defects. Mack demonstrated only that in refusing to pay warranty claims BorgWarner rarely did so explicitly on the grounds that no signed PAA existed. When declining to pay warranty claims, BorgWarner provided a reason to Mack as to each failed turbocharger. For example, BorgWarner frequently attributed its decision not to pay warranty claims because of "surge operation" or "foreign object damage."[7] Mack points to nothing in the record suggesting that BorgWarner knowingly decided to pay warranty claims based on a design flaw

---

7. The parties referred to BorgWarner's stated reason for declining warranty coverage as a "condition code." The meaning of "surge operation" is not clear from the record.

or a failure to conform to specifications.  BorgWarner's failure to mention a PAA among its stated reasons for declining warranty coverage for individual turbochargers does not amount to a waiver, that is, a "clear, unequivocal and decisive action."

Nonetheless, BorgWarner's repeated correspondence stating that, in the absence of a signed PAA, it would pay warranty claims based on deficient material or workmanship was an unequivocal waiver of any condition precedent as to that warranty.  This correspondence also demonstrates BorgWarner's intent not to waive the condition precedent as to the specifications warranty, which includes design defects.  There is simply no evidence to support an inference that BorgWarner waived the condition precedent related to the specifications warranty.

Mack next argues that BorgWarner prevented Mack from satisfying the condition precedent requiring a signed PAA through its insistence on including "warranty" language in any PAA.  According to Mack, this was an improper attempt to renegotiate the terms of the Supply Agreement.  "[W]hen one party to a contract unilaterally prevents the performance of a condition upon which his own liability depends, the culpable party may not then capitalize on that failure."  Benchmark Group, Inc. v. Penn Tank Lines, Inc., 612 F. Supp. 2d 562, 580 (E.D. Pa. 2009). Moreover, every contract in Pennsylvania implies a covenant of good faith and fair dealing, which requires, among other things, "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party."  Id. (internal

quotations omitted). A breach of the implied covenant of bad faith and fair dealing may include "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." Kaplan v. Cablevision of Pa., Inc., 671 A.2d 716, 722 (Pa. Super. Ct. 1996).

Mack's "evidence" of prevention of performance consists of three documents, none of which is supported or explained by a declaration or deposition testimony. The first and second documents relate to a February 20, 2004 video conference between the parties. In the first document, meeting notes that Mack sent BorgWarner, the only reference to warranty coverage is the sentence: "Any parameters that have been added or changed after the development of the 5166M series turbocharger are made without giving Mack the proper opportunity to meet these limits and therefore are considered to be a 'moving target' and is [sic] unacceptable as a reason for denying or limiting warranty coverage." The second document consists of notes that BorgWarner sent Mack from the same conference and contains a similarly inscrutable reference to warranties. Finally, Mack selectively quotes an internal BorgWarner email from July 2004 in which the PAA is discussed. The relevant portion of the email reads:

> The facts are that [BorgWarner is] ready and willing to sign the PAA as it exists today, however, Mack will not sign it. No fault to Darin [Lewis, a Mack representative], he is under orders from his upper management that

> they will not sign it with the disclaimers
> for the various issues in it.  That is their
> decision, so no warranty.  We need to stand
> our ground on this issue!  It will save us
> thousands in warranty in the months to come,
> since everything will be changed over to the
> 5176 turbo.  We need to keep quiet from here
> on out regarding the thrust bearing issue; we
> have evidence to suggest that the bronze
> thrust bearing performs better in the S410V
> VTG.  However, Mack is now aware of our work
> in this area and will push for warranty
> coverage.  We need to be VERY careful to
> avoid exposure.

(capitalization in original).  These documents simply do not support an inference that BorgWarner frustrated Mack's compliance with the condition precedent in Annex V, paragraph F.

Finally, Mack asserts that BorgWarner has not introduced sufficient evidence from which to conclude that all of Mack's warranty claims arising from faulty materials or workmanship have been paid.  The court agrees.  Whether or not BorgWarner made all payments required under the materials and workmanship warranty is the ultimate issue in Counts I and II of the complaint.  In support of its contention that it has made all such payments, BorgWarner relies exclusively on a one-sentence paragraph in an employee's declaration that states:  "In the limited instances in which it was determined that a turbocharger failure was caused by defects in materials or workmanship, BorgWarner paid warranty claims in full pursuant to the Supply Agreement's 'materials and workmanship' warranty."  No further factual support for this assertion is given.  BorgWarner's conclusory statement as to the ultimate issue, offered without

factual support, is insufficient to serve as the basis for summary judgment.[8]  See LaRouche v. Webster, 175 F.R.D. 452, 455 (S.D.N.Y 1996); 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.14[1][d] (3d ed. 2010).

The undisputed facts show that the condition precedent in paragraph F of Annex V was not satisfied, and as a result, BorgWarner's warranty obligation under the "conform to the specifications agreed upon by the parties" language has not been triggered.[9]  Accordingly, BorgWarner is not liable for Mack's warranty claims under the specifications warranty for design defects.  The court will grant BorgWarner summary judgment on Counts I and II to the extent Mack seeks to recover under the Supply Agreement for defectively designed turbochargers, that is, for failure to conform to agreed upon specifications.  The court will deny BorgWarner's motion for summary judgment on Counts I and II to the extent that Mack seeks to recover under the Supply Agreement due to defective materials or workmanship (but not design) in the turbochargers it supplied.

---

8.  For its part, Mack failed to identify even one of the 27,000 failed turbochargers allegedly at issue for which it contends BorgWarner should have paid but did not do so under a warranty claim under the materials and workmanship warranty.

9.  Mack suggests obliquely that the signed PAA governing BorgWarner's production of prototype turbochargers satisfied Annex V's requirement for a signed PAA.  That Mack and BorgWarner spent so much time negotiating a second PAA establishes that the parties did not consider the prototype PAA sufficient under the Supply Agreement.

IV.

Count III of Mack's complaint pleads a claim for breach of the implied warranties of fitness for use and merchantability. BorgWarner's motion for summary judgment asserts that such warranties were waived in the Supply Agreement. The implied warranties of fitness and merchantability can be waived if the waiver appears conspicuously in a written contract. 13 Pa. Cons. Stat. § 2316(b). Annex V begins by reciting in boldface capital letters that "This is the sole warranty applicable to the products. All other warranties, express or implied, including the implied warranties of merchantability and fitness for a particular purpose, are disclaimed." Mack and BorgWarner were sophisticated parties bargaining at arm's length. The waiver language in Annex V was sufficiently conspicuous to put Mack on notice that BorgWarner disclaimed these implied warranties. See Strickler v. Peterbilt Motors, Co., Case No. 04-3628, 2005 WL 1266674, at *4-*5 (E.D. Pa. May 27, 2005).

BorgWarner's motion for summary judgment will be granted as to Count III.

V.

Mack states in its opposing brief that additional time for discovery is necessary because "the record for this matter has not been fully developed." If the nonmovant seeks to have the court defer decision on a motion for summary judgment because "it cannot present facts essential to justify its opposition," it must produce an affidavit or declaration setting forth the

"specified reasons" it cannot present those facts.  Fed. R. Civ. P. 56(d).  Mack has not supported its request for additional discovery with an affidavit or declaration.  Due to Mack's failure to comply with Rule 56(d), its request for additional time will be denied.